398

## PORTO RICO FERTILIZER CO. v. SANCHO.

### YABUCOA SUGAR CO. v. SAME.

#### Nos. 3274, 3285.

Circuit Court of Appeals, First Circuit.

July 13, 1938.

Henri Brown and Brown, Gonzalez & Newsom, all of San Juan, P. R., for appellant Porto Rico Fertilizer Co.

Mariano Acosta Velarde, of San Juan, P. R., for appellant Yabucoa Sugar Co.

Col. William C. Rigby, of Washington, D. C. (B. Fernandez Garcia, Atty. Gen. of P. R., and Nathan R. Margold, Sol. for Department of Interior, of Washington, D. C., on the brief), for appellee.

E. T. Fiddler, H. S. McConnell, and Fiddler, Cordova & McConnell, all of San Juan, P. R., amici curiæ.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

These are two appeals from judgments of the Supreme Court of Puerto Rico involving similar questions of law under the Insular Income Tax Act approved August 6, 1925, No. 74. The facts are to be gathered from the complaints to which demurrers were filed, on the ground that they did not state a cause of action.

By the statute the taxpayer was required to file a return (sections 37(a), 39(a)(b), and 27(a) and to pay the tax (section 53(a) (b) computed by the Treasurer upon the face of the return (section 54) without formal assessment.

In the complaint of the Fertilizer Company it was alleged that between June, 1926, and June, 1932, it returned and paid as withholding agent, income taxes on payments of interest made by it to the Virginia-Carolina Chemical Corporation, amounting to $42,300; that the Act required this to be done (section 35); that it required all persons making payments of interest to deduct and pay over to the Treasurer a stated percentage of such interest as a tax, not on the person making the payment, but on the person receiving such payment; that such taxes as applied to the Chemical Company were illegal and unauthorized because neither the Chemical Company nor the loans made by it to the plaintiff ever had a taxable situs in Puerto Rico (Domenech v. United Porto Rican Sugar Company, 1 Cir., 62 F.2d 552); that in October, 1933, the plaintiff filed claims for refund of the payments for these years with the Treasurer under the law of 1925; and that all the claims were denied by the Treasurer. All the taxes, refund of which was claimed by the Fertilizer Company, were of this character. Each payment of interest by the Fertilizer Company was made the subject of a separate count or

claim. As to the payments made more than four years before the petition for refund was filed, it was conceded in the argument before the Supreme Court that they were barred by special limitation of the statute (four years after payment of the taxes (Sec. 64 (b), and they are no longer insisted on.

This case stands on the three last payments, which aggregated about $20,000.

After the Treasurer had denied its claims for refund the Fertilizer Company brought the present suit in the District Court for San Juan, without having appealed from the Treasurer's denial of the claims to the Board of Review and Equalization, and, as above stated, the court dismissed its complaint.

■ In Domenech v. United Porto Rican Sugar Co., 1 Cir., 62 F.2d 552, this court held that the provisions of the Puerto Rico statute taxing payments of interest to non-residents was unconstitutional and, certiorari having been denied, that decision stands. It follows that the taxes on such payments of interest were illegal and constituted overpayments. Of this there can be no question.

In the Yabucoa case, the appellant filed returns showing ordinary income taxes to be due and paid such taxes without protest. Later the Treasurer determined a deficiency tax against that company amounting to $1,301.51 (Sec. 57(a) (b). From this determination (not assessment) the Sugar Company appealed to the Board of Review and Equalization which disallowed the deficiency and found that there had been an overpayment of general income taxes on its return of $6,803.66. A claim for refund of this amount was thereupon filed with the Treasurer by whom it was disallowed. From this disallowance an appeal was taken to the Board of Review and Equalization (Sec. 76 (b), which again found there had been an overpayment. The Treasurer still refusing to make refund, the present suit was brought by the Yabucoa Company in the District Court of San Juan, which decided against it.

It thus appears that the plaintiff in each case is seeking to recover a refund of taxes paid on its return filed in the normal course with the Treasurer,—the Fertilizer Company on the ground that the tax thus collected was illegal and void in toto, and the Yabucoa Company on the ground that the tax collected was excessive; and that, in the Yabucoa case, the plaintiff appealed from the Treasurer's denial of its claim for refund before bringing suit, while the Fertilizer Company did not. In no other particular do the rights of the plaintiffs to maintain their causes of complaint differ. Otherwise stated, the plaintiffs in both cases are seeking a refund of taxes returned in the usual way, not assessed, and paid without protest, the only difference between them being that in the Yabucoa case, after denial of its claims for refund by the Treasurer, that company appealed to the Board of Review and Equalization before bringing suit, while the Fertilizer Company did not.

■ It is entirely clear that the provisions of Section 76(a), when read in connection with Section 57(a) and (b) relate to deficiency taxes, which have been levied (assessed) against the taxpayer within five years after his return was filed as provided in Section 60(a) (1), and that the provision in Section 76(a) that "the taxpayer shall pay under protest such tax" has to do only with a suit brought to test the validity of an assessed deficiency and to recover the whole or any part of the tax held to be invalid.

In the Yabucoa case, as the taxpayer filed its return in the usual way and paid the tax imposed by the statute and, within four years from the time of payment (Section 64(b), presented its claim for refund to the Treasurer, who denied it, and appealed therefrom to the Board of Review and Equalization, the sole question is whether it can maintain a suit against the Treasurer under 76(b) to recover what is justly due it, the tax having been paid without protest.

Section 76(b) provides:

"(b) No suit or proceeding shall be maintained in any court for the recovery of any income tax or excess-profits tax alleged to have been erroneously or illegally assessed or collected, or of any pecuniary penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected until a claim for refund or credit has been duly filed with the Treasurer and with the Board of Review and Equalization on appeal, according to the provisions of law in that regard, and the regulations established in pursuance thereof."

■ The plain meaning of this provision is that a suit may be maintained for the recovery of income taxes erroneously or illegally collected, provided a claim for refund has been duly filed with the Treasurer and with the Board of Review and Equalization on appeal; there is no condition or proviso requiring that the tax in such case shall have

been paid under protest. Section 76(b) expressly recognizes that regulations interpreting it may be necessary. Section 68 authorizes the Treasurer "to prescribe needful rules and regulations for the enforcement of this Act"; and, on May 17, 1926, the Treasurer promulgated a regulation stating that a suit or proceeding for the recovery of an income tax erroneously or illegally collected could be maintained by the taxpayer (a) by making a voluntary payment; (b) by filing a claim for refund within four years from the time of payment; and (c) if the claim was denied by the Treasurer, the taxpayer could bring an ordinary action before a court of competent jurisdiction to recover the amount so paid. The only trouble with this regulation construing Section 76(b) is that it authorized a suit to be brought upon the mere filing of a claim for refund with the Treasurer rather than after an appeal to the Board of Review and Equalization. The regulation expressly recognizes that in such case payment under protest is not necessary. Its only defect, as we view it, is in failing to give effect to the express language of Section 76(b) which calls not only for the presentation of a claim for refund to the Treasurer but also to the Board of Review and Equalization on appeal.

Section 55 provides, in substance, that if the taxpayer has paid more than the amount of the tax "determined" to be correct (that is, determined by the Treasurer and Board of Review and Equalization on appeal) the excess over the amount so determined "shall be credited or refunded" as provided in Section 64; and Section 64(a) provides that where such an overpayment has been made "the amount of such overpayment shall be credited against any income or excess-profits tax or installment thereof then due from the taxpayer, and any balance of such excess shall be refunded immediately to the taxpayer." Section 75 authorizes the Treasurer "to remit, refund, and pay back all taxes erroneously or illegally assessed or collected, all penalties collected without authority, and all taxes that appear to be unjustly assessed or excessive in amount, or in any manner wrongfully collected."

It thus appears that Section 76(b) was intended to authorize the maintenance of a suit against the Treasurer, in case he refused to pay back the illegal or excessive tax collected, as he was authorized and directed to do under Sections 75, 55, and 64. It certainly could not have been the inten-

tion of the law maker to leave the payment of the taxpayer's just claim solely to the whim of the Treasurer.

In fact we fail to see how the law-making body could have enacted Section 76(b) with any other purpose in view than as authorizing a suit (conditioned as above stated) in case the Treasurer refused payment.

In these cases the court below did not attempt to give any rational meaning or construction to the provisions of Section 76(b) but treated the cases as though no such provision as Section 76(b) existed; and, having wiped the Section off the statute book, and failed to recognize any distinction between a suit to recover a refund and one to test the validity of a deficiency assessment, it held that the former could not be maintained unless the tax was paid under protest, as required by Section 76(a) in the case of deficiency assessments.

We think this holding is manifestly wrong; that Section 76(a) and (b) relate to distinct matters and that the provision for payment under protest in Section 76(a) applies only to suits for the recovery of deficiency assessments to which the provisions of Section 76(a) relate.

We do, however, think that the provision in Section 76(b) requiring an appeal to the Board of Review and Equalization is a condition precedent to the maintenance of a suit under that section and the Fertilizer Company not having taken such an appeal cannot maintain its suit.

In No. 3274 the judgment of the Supreme Court of Puerto Rico is affirmed.

In No. 3285 the judgment of the Supreme Court of Puerto Rico is vacated and the case is remanded to that court for further proceedings not inconsistent with this opinion.

WILSON, Circuit Judge (concurring).

I concur in the result of the opinions of Judge Bingham in these cases on the grounds set forth below.

The two cases present somewhat different state of facts, but involve similar questions and the same sections of Act 74 of the Laws of 1925 of Puerto Rico, hereinafter referred to as the Act, relating to income taxes, and may be disposed of in one opinion.

The intent of the statute, though inartistically worded in some particulars, is clear when considered in its entirety. Substan-

tially all income and excess-profits taxes are without doubt paid voluntarily on their due date, without the necessity of levy, assessment or any other kind of action on the part of the Treasurer or Collector. That is what the Legislature intended. It is the procedure adopted by the Federal Income Tax laws, and is of substantial benefit to the public treasury, making available ·for public purposes ascertainable income at definite dates, which taxpayers must pay or become liable for penalties and interest.

Neither the treasury department nor the taxpayers are, however, infallible upon a ·complicated subject such as income taxes, and the Treasurer of Puerto Rico is required as soon as is practicable to examine the taxpayer's return and determine whether he has paid the correct amount of tax. The law contemplates that overpayments made by the taxpayer shall be returned, and that underpayments shall be collected. The Act sets up a procedure by which the taxpayer can compel the return of overpayments, and by which the Treasurer can compel the payment of the correct amount ·of the tax in case of underpayments.

The intention of the Legislature to encourage taxpayers to pay what they think is owing, upon the assurance that it will be refunded if found to be in excess of what is properly due, is manifest from the Act, and the requirement for payment under protest as a condition precedent for a suit to recover is limited only to those cases in which the taxpayer has been put upon notice by receipt of a notice of deficiency and that his determination of his own tax has been contested.

The statute should be interpreted with this intent in mind.

The plaintiff in the first case, the Porto Rico Fertilizer Company, hereinafter referred to as the Fertilizer Company, filed a return for the several years from 1924 to 1931, both inclusive, showing interest paid each year on money borrowed of a Virginia corporation and used in Virginia or other places in the United States for the purchase of materials to be used in its business.

The petition of the taxpayer alleged that the Treasurer of Puerto Rico notified the plaintiff that he had assessed against the plaintiff according to its returns the several amounts provided by the Act, which it paid voluntarily and without protest as a withholding company for the Virginia company (Sec. 22). The defendant demurred to the petition.

Eight actions were brought by the Fertilizer Company against the Treasurer of Puerto Rico to recover the sums illegally collected by him for the several years in question, but abandoned its first five causes of action as being prescribed by Section 64(b) of the Act.

The District Court of San Juan held that, since the taxes were not paid under protest, as provided in Section 76(a) of the Act, as a condition of bringing suit against the Treasurer, and as no appeal had been taken to the Bureau of Review and Equalization from the refusal of the Treasurer to refund the sum erroneously collected, the plaintiff could not recover.

On appeal to the Supreme Court of Puerto Rico, that Court sustained the judgment of the District Court. "For the reason that the payment was not made under protest, and no appeal was taken to ·the Board of Review and Equalization, the judgment appealed from should be affirmed."

Since the cases were presented on demurrer, the allegations of the complaints must be taken as containing all the facts. It is alleged in the Fertilizer case that the Treasurer notified the taxpayer that he had assessed the taxes therein set forth. The sums alleged as assessed were voluntarily paid and without protest, though the statute imposing the taxes in December, 1932, was held by this· Court to be invalid under the Organic Act of Puerto Rico, 39 Stat. 951, as imposing taxes on non-residents upon income outside the Island. Domenech v. United Porto Rican Sugar Co., 1 Cir., 62 F.2d 552.

It is clear that the sums so paid were not in the nature of deficiency taxes under Sections 56 and 57 of the Act, but may be treated as an overpayment under Sections 23(b) and 64 of the Act. The plaintiff requested that the sums paid by it be refunded, presumably under Section 75 of the Act, which was refused by the Treasurer, but the plaintiff did not appeal therefrom to the Board of Review and Equalization.

While the Income Tax Acts of 1919 and 1921, when examined in their entirety, were also intended to provide for the assessment, payment, and the determination of income taxes by the Treasurer, and an adjustment of any differences by an appeal to a Board of Review and Equalization, and an appeal to the Courts, see Sections 57–63, and Section 66 of the 1919 Act, and Sections 42–47 of the 1921 Act. The Legislature by the

Act of 1925 attempted to clarify certain provisions of the prior Acts.

However, the procedure under the Income Tax Act of 1919, 1921 and 1925 has been so confused by the decisions of the Supreme Court of Puerto Rico that, while ordinarily this Court will follow the interpretation of the law of Puerto Rico by the Insular Supreme Court, we think we are warranted in determining, without regard to the many conflicting decisions of the Insular Supreme Court, what seems to us to be the intent of the Insular Legislature in the passage of Act 74 of the Laws of 1925 so far as it affects the decision of these cases.

Sections 22, 27(a), 37(a), 39, 53, 54, 55, 56, 57, 64, 75 and 76 of the Act of 1925 are clearly intended to provide for returns by taxpayers (Secs. 22, 37); the voluntary payment by the taxpayer of the tax provided by law according to his return within a specified time (Sec. 53); the examination of his return by the Treasurer (Sec. 54); and if he finds on examination of the return, or from any additional evidence, that the sum voluntarily paid by the taxpayer was less than the amount due from the taxpayer, the Treasurer then notified the taxpayer of the determination of a deficiency tax (Sec. 57); and if he finds that the taxpayer has overpaid the sum due from him (Secs. 55, 64), any such overpayment shall be refunded immediately to the taxpayer.

In case the Treasurer, upon the examination of a return, finds that the sum paid by the taxpayer is less than the sum due from him as taxes under the Act, and determines that a deficiency exists and notifies the taxpayer of such deficiency, the taxpayer may, within thirty days, file an appeal with the Board of Review and Equalization (Sec. 57 (a), the decision of which is final. The amount so determined by the Board shall be assessed by the Treasurer (Sec. 57(b).

In case an overpayment is not refunded as provided in Section 23(b) and 64, and the taxpayer under Section 75 applies to the Treasurer, who is authorized to make the refund, and the Treasurer refuses for any reason, as in case a dispute exists as to the amount of the overpayment, the taxpayer under Section 76(b) may appeal to the Board of Review and Equalization, and if the Board of Review finds that there was an overpayment and the Treasurer still refuses to refund the amount of overpayment determined by the Board, it is clear, we think, that a suit may be brought to recover.

It is clear that the Fertilizer Company neither paid under protest the taxes involved in the action brought by it, nor did it appeal from the Treasurer's refusal to make a refund to the Board of Review. It had a remedy at law, if it had followed the provisions of the Act. Mandamus does not lie to compel action by an official where the law provides a remedy.

The Treasurer, however, without warrant of a legal statute, collected the taxes for the years 1929, 1930 and 1931; as a result an action at law existed against the Treasurer, Jimenez v. Domenech, 1 Cir., 80 F.2d 767, 768, for money had and received, which appears to be provided for in Sections 1795–1801 of the Civil Code of Puerto Rico. Also see Sage et al. v. United States, 250 U.S. 33, 39 S.Ct. 415, 63 L.Ed. 828; George Moore Ice Cream Co., Inc., v. Rose, Collector, 289 U.S. 373, 53 S.Ct. 620, 77 L.Ed. 1265; United States v. Hvoslef, 237 U.S. 1, 35 S.Ct. 459, 59 L.Ed. 813, Ann.Cas.1916A, 286.

The plaintiff's present action is, however, based on Act 74 of the Laws of 1925, and since it has not complied with its provisions, the judgment of the Supreme Court of Puerto Rico must be affirmed with costs, not to include counsel fees.

The case of the Yabucoa Sugar Company, hereinafter referred to as the Sugar Company, presents a somewhat different state of facts from that in the case brought by the Fertilizer Company.

From the complaint in this case, to which a demurrer was filed by the defendant, it appears that on the return of the plaintiff filed with the Treasurer, no tax was at first assessed against the plaintiff, but the plaintiff at the request of the Treasurer voluntarily paid the amount due according to the return. Later the Treasurer, having practiced an investigation of the books of account of the Yabucoa Sugar Company, a notice of a deficiency tax of $1,301.51 was prepared by the Treasurer and was served on the plaintiff October 31, 1928.

From this notice of a deficiency tax the plaintiff appealed to the Board of Review and Equalization, which found that there was no deficiency but an overpayment by the plaintiff of $6,803.66, which was made at the request of the Treasurer on its original return. The plaintiff then filed a petition with the Treasurer for refund and credit, who granted a refund of $525.56 instead of the amount found to have been overpaid by the Board of Review; where-

upon the plaintiff again appealed from the decision of the Treasurer to the Board of Review. The Board confirmed its prior decision on the former appeal, whereupon the plaintiff brought this action to recover of the Treasurer the sum found to have been overpaid by the Board of Review and Equalization.

The District Court of San Juan held that, inasmuch as the taxes involved were not paid under protest, no recovery could be had. The Supreme Court on appeal affirmed the judgment of the District Court and held that under Section 75 of the Act of 1925, the Treasurer having refused to make the refund, there was no redress for the taxpayer by applying to the courts; that Section 75 gave to the Treasurer sole discretion as to whether he would allow a refund in any case. We think this interpretation of Section 75 is not warranted. Section 64 requires a refund of any overpayment. No discretion is imposed on the Treasurer as to whether he will grant it or not. In case a question is raised as to the amount of the overpayment, the Treasurer may refuse to grant a refund according to the plaintiff's claim, but the taxpayer may appeal to the Board of Review, the decision of which is final, which was done in this case.

There appears to be no question but that the plaintiff has complied with all the necessary requirements of the Act, including Section 76(b), for bringing a suit to recover the overpayment found by the Board of Review.

It had the right of appeal to the Board of Review on two grounds: (1) from the decision of the Treasurer refusing to grant a refund of the overpayment, and (2) from the Treasurer's determination of a deficiency tax of $1,301.51. Section 76(b) clearly implies that a suit may be brought to recover any sum found to be due by the Board of Review as an overpayment.

Since the Board found that no deficiency tax was due and its decision is final, there was no occasion for the plaintiff to pay under protest the sum levied by the Treasurer as a deficiency tax. Any other interpretation of the Act permits no effect to be given to Section 76(b), or to the provisions of Section 64, which provides that all overpayments, after crediting the amount to any other tax due for a different year, shall be returned to the taxpayer.

It is unnecessary to consider the effect of Act 8 of the Laws of 1927, since the Supreme Court of Puerto Rico has finally concluded that that Act, as this Court indicated in its opinion in Domenech. v. Verges, 69 F.2d 714, 716, in no way modified or repeals any provision of the Act of 1925, which is a complete Act in itself for the assessment and collection of income taxes.

MORTON, Circuit Judge (dissenting).

There is no disagreement as to the general scheme of the statute under discussion. Income taxes imposed by it fall into two classes (1) those shown to be due on the face of the return, and paid voluntarily without objection or protest, (2) those collected on deficiency assessments. In regard to the latter there are careful and adequate provisions. (Sections 57 and 76(a).) If deficiency assessments are objected to the taxpayer may appeal to the Board of Review; if the Board of Review decides against him he must pay, and may sue in the courts to recover back the alleged illegal exaction.

The present case does not relate to deficiency taxes; it concerns only taxes which were voluntarily paid without protest and deals only with claims for refund. The statute provides very specifically for the return of overpayments without any requirement of objection or protest against the original payment. (Sections 53, 64.) These sections apply to voluntary overpayments, made presumably by mistake on the part of the taxpayer. It also authorizes and directs the Treasurer to repay erroneous or illegal collections and to report annually to the Legislature his transactions under this authority. (Section 75.) While no express provision is made therefor it is not doubted that a person who has voluntarily overpaid his tax may apply to the Treasurer under these sections for a refund; and it is clearly the Treasurer's duty if overpayment is established to make a proper refund. The crucial question is who is to determine whether there has been overpayment of a tax voluntarily paid, i. e. to pass on such claims for refund.

The statute makes only one reference to them. (Section 76(b)*). The present case

---

\* "No suit or proceeding shall be maintained in any court for the recovery of any income tax or excess-profits tax alleged to have been erroneously or illegally assessed or collected, or of any pecuniary penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner

involves the correct construction of this subsection. At first reading it appears to be a limitation or restriction on suits for the recovery of overpayments, already authorized elsewhere in the statute. It says in effect that no suit shall be maintained in any court until a claim for refund shall have been filed with the Treasurer and on appeal with the Board of Review "according to the provisions of law in that regard, and the regulations established in pursuance thereof." The difficulty is that there are no provisions of law authorizing suits in court for the recovery of taxes voluntarily paid or empowering the Board of Review to deal with claims for refund on appeal from the Treasurer, or with taxes which have been paid. I agree with my brother Bingham that Section 76(a) relates only to deficiency assessments and payments, and is of no assistance. The reference to suits in court and to appeals to the Board of Review although in the negative form might possibly have been construed as conferring by implication the jurisdiction now held to exist in the Board of Review and in the Courts if these references had not been limited as they are very expressly by the last clause in the sub-section. It seems clear that provisions assumed to be in the statute are absent. My brethren elaborate Section 76(b) to include by construction what they suppose the omitted provisions to have been. Even so there remain unsolved difficulties. If the Board of Review decides in favor of the taxpayer what happens? The Supreme Court of Puerto Rico evidently felt that the mistake was the other way, i. e. in allowing Section 76(b) to stand, when the provisions to which it refers were elided. The Supreme Court accordingly held that with respect to voluntary overpayments the taxpayer was in the hands of the Treasurer on matters of refund, "if the decision of the Treasurer is against him he cannot appeal from the same to Courts of justice." This does not seem to me an unreasonable solution of the difficulty which confronted them

Indeed I incline to think it was right. Under the view, taken in the majority opinions, every tax which has been voluntarily paid without protest may be reopened on claims for refund at any time within four years and resettled de novo in court proceedings. This is in fact what is approved by the decision in the Yabucoa Sugar case before us. Greater consideration is shown to voluntary overpayments than to deficiency assessments. This is a wide departure from the view of the Supreme Court of Puerto Rico, and from anything to be found in the statute in express terms at least. It has often been said that in matters of local law the opinion of that court is not to be set aside unless clearly wrong. As I have said I incline to think the Supreme Court of Puerto Rico was right; I certainly do not think it was clearly wrong.

In the Fertilizer Company case there was clearly an overpayment of tax which it was the Treasurer's duty to recognize and refund. His refusal to do so is on the facts before us a clear breach of his statutory duty. No attempt is made to defend it. The Fertilizer Company had no right to bring suit on its claim for refund. Its remedy appears to be a suit against the Treasurer for mandamus to compel him to perform his statutory duty. Lane v. Hoglund, 244 U.S. 174, 37 S.Ct. 558, 61 L.Ed. 1066; Dismuke v. United States, 297 U.S. 167, 56 S.Ct. 400, 80 L.Ed. 561.

In the Sugar Company case the claim for refund rested on changes in income or deductions made by the taxpayer after the tax had been voluntarily paid. They were not approved by the Treasurer. It does not appear that the Sugar Company's claim was established beyond fair doubt nor that it was clearly the duty of the Treasurer to accept it.

I think both judgments should be affirmed. In the case of the Fertilizer Company with leave to bring further proceedings by mandamus or otherwise as advised.

---

wrongfully collected until a claim for refund or credit has been duly filed with the Treasurer and with the Board of Review and Equalization on appeal, according to the provisions of law in that regard, and the regulations established in pursuance thereof."