SANCHO, Treasurer, v. NATIONAL CITY
BANK OF NEW YORK.

No. 3538.

Circuit Court of Appeals, First Circuit.

June 28, 1940.

William Cattron Rigby, of Washington, D. C. (George A. Malcolm, of San Juan, P. R., and Nathan R. Margold, of Washington, D. C., on the brief), for appellant.

E. T. Fiddler, of San Juan, P. R., and Andrew Kirkpatrick, of Larchmont, N.Y. (H. S. McConnell and Fiddler, McConnell & Gonzalez, all of San Juan, P. R., on the brief), for appellee.

Before MAGRUDER and MAHONEY Circuit Judges, and PETERS, District Judge.

MAGRUDER, Circuit Judge.

The Butler Act of March 4, 1927 (44 Stat. 1421, 48 U.S.C.A. § 872) amended Section 48 of the Organic Act of Puerto Rico by adding the following:

"That no suit for the purpose of restraining the assessment or collection of any tax imposed by the laws of Puerto Rico shall be maintained in the District Court of the United States for Puerto Rico."

This provision was inserted in the bill by amendment on the floor offered by Senator Bingham, who thus explained its purpose (68 Cong.Rec., p. 5025):

"I will state that the change in the existing law is this: The Organic Act of Porto Rico does not carry to Porto Rico the general statutes of the United States. Consequently, it has been possible and has proved an extremely dangerous thing in the government of Porto Rico for taxpayers to secure an injunction against paying Porto Rican taxes in the court of the United States, in the district court of the United States for Porto Rico; and thereby, instead of following our practice—

which is to pay the tax first and then take an appeal—they do not pay the tax at all. They get injunctions against paying the tax; and I have seen in one of the publications the statement that at one time there was over $2,000,000 of uncollected taxes held up by injunction. This amendment is to apply the same rule in Porto Rico that now applies on the continent of the United States."

On April 30, 1938, the National City Bank of New York, hereinafter called the Bank, filed its complaint in the United States District Court for Puerto Rico against the Treasurer of the Territory, praying a decree: "That the defendant Treasurer of Puerto Rico * * * be perpetually restrained and enjoined from attaching, levying upon, embargoing or distraining any property of the complainant The National City Bank of New York, and from taking any step whatsoever for the collection of the income tax" of complainant for the year ending December 25, 1937, in the sum of $41,590.33. By supplemental bill filed March 27, 1939, a decree in similar terms was prayed with respect to income taxes in the sum of $33,886.91 for the year ending December 25, 1938.

On August 7, 1939, the district court entered its final decree in the cause providing:

"That Rafael Sancho Bonet, Treasurer of Puerto Rico, defendant herein, his successor or successors in office, and the agents, employees, and any person acting by and under authority derived from the said defendant or his successors in office, be, and they hereby are, perpetually restrained and enjoined from attaching, levying upon, embargoing, or distraining any property of the complainant, The National City Bank of New York, and from taking any step whatsoever for the collection of the income taxes shown to have been due on the returns filed by the complainant with the defendant for the taxable years ending December 25, 1937, and December 25, 1938, respectively."

From the foregoing decree the Treasurer of Puerto Rico prosecutes the present appeal.

Comparing the prayer of the bill and the terms of the decree with the above-quoted prohibition in the Butler Act, it would seem on the face of it that the decree is in the very teeth of the statute. A heavy burden of persuasion rests upon the Bank to explain how this is not so; we

have not been persuaded, but on the contrary think that the court below should have dismissed the bill for lack of jurisdiction.

▋ It is not enough to show that for some reason or other the tax is not lawfully due. Obviously the prohibition against injunctions is not limited to cases where in the court's view the tax is properly owing and where there would be no occasion for an injunction anyway. Congress has said, in effect, that even assuming the tax is not lawfully due, the taxpayer must pay first and litigate afterwards. This is no doubt awkward and inconvenient from the taxpayer's point of view. But the disadvantage to the taxpayer is considered to be outweighed by the need of protecting the public revenue against the very real danger that collection of taxes properly payable may be postponed by injunction pending protracted litigation. The inconvenience to the taxpayer is the same regardless of the ground of his claim that the tax is not legally due—whether he asserts that the taxing act is unconstitutional, or that by proper construction it does not cover him, or that a deduction allowed by law has been disallowed, or (as the Bank contends in the case at bar) that the tax should be considered in effect as having already been paid by virtue of a credit properly allowable for overpayments in previous years.

A quite condensed statement of the complicated facts will suffice to indicate the nature of the present controversy.

Complainant is a national banking association, organized under the laws of the United States, with its principal office in New York City, and various branch offices established in the Island of Puerto Rico under the provisions of 12 U.S.C.A. § 601. For many years it had been the practice of the New York office of the complainant to supply funds to its Puerto Rican branches whenever necessary for local operations. From 1930 to 1935 the Puerto Rican branches customarily credited the New York office with an item designated as "interest" on the funds so provided. On the basis of these book entries the Puerto Rican branches, in filing their annual income tax returns, under the insular income tax act, for the years ending December 25, 1930-35, inclusive, deducted the amount entitled "interest paid" to the New York office as an expense of the local business. Other than this item the Bank took no

deduction in its annual income tax return to the Treasurer of Puerto Rico for any of its expenses outside of Puerto Rico allocable to its Puerto Rican income.

For each of the years 1930 to 1935, inclusive, the Puerto Rican branches also filed with the Treasurer, at his request and upon forms furnished by him entitled "Annual Return of Income Tax Withheld at the Source", separate returns showing the item entitled "interest paid" by the Puerto Rican branches to the New York office. Upon the theory that this so-called "interest" was income derived by the New York office from Puerto Rican sources, the Treasurer required the Bank to pay income taxes "withheld at the source" at the rate of 12½% on this item of "interest". (§§ 22, 35, Income Tax Act of 1924, Laws of Puerto Rico 1925, pp. 460, 484, hereinafter described by a shorthand expression as the "withholding tax".) These taxes were paid by the Bank for the years 1930 to 1934, inclusive. The payments were not made as a result of deficiency assessments, but were in the amounts shown to be due according to the returns filed by the taxpayer. However, at the time each of these payments was made the Bank advised the representative of the Treasurer authorized to receive payments of income taxes, that the Bank was not subject to any tax on account of such "interest" and that the payments were made under protest; and the Bank further caused this protest to be noted on the back of the receipts issued by the Treasurer in acknowledgment of such payments.

The reason assigned for designating this charge as "interest" was that it was in conformity with accounting practices under 12 U.S.C.A. § 604,[1] requiring that the accounts of branches be kept as though they were separate institutions. The amount of "interest" paid by the Puerto Rican branches to the head office of the Bank did not represent an exact computation of the cost of head office funds used by the Puerto Rican branches, but was merely an approximation required for intra-bank accounting purposes.

Thereafter, within four years of the date of each of the above payments of taxes withheld at the source, the Bank filed with the Treasurer claims for credit or refund, pursuant to Section 64(b) of the Income Tax Act of 1924, Laws 1925, p. 526. The Treasurer has denied each of these claims for credit or refund.

In the fall of 1936, the Treasurer commenced an extended reinvestigation of the income tax questions relating to the Bank, particularly with respect to this item of so-called "interest". Numerous conferences took place between the Treasurer and his subordinates, and representatives of the Bank, and the books of the Bank were re-examined by officials of the Treasury Department.

While this reinvestigation was proceeding, on February 17, 1937, the Treasurer served notice on the Bank of the levy of income tax deficiency assessments for the tax years 1933, 1934, and 1935, based on the rejection by the Treasurer of the deduction taken by the Bank, in its returns for those years, of the "interest paid" to the New York office by the Puerto Rican branches. The ground taken was that these payments were not really interest but were merely intra-company transactions.

During the course of the negotiations the Bank maintained that though this item of "interest" was not properly deductible as such, the Bank was entitled in lieu thereof to a deduction of the extra Puerto Rican cost to the head office of furnishing the Puerto Rican branches with operating funds. The Bank proposed to the Treasurer a formula for determining the cost of these funds. This formula was approved by the Treasurer. A tentative agreement was reached to the effect that the Bank would for income tax purposes be regarded as a single corporate entity (as indeed it was), and that these intra-company payments designated as "interest" would not be so regarded either for the purpose of the withholding tax or for the purpose of the deduction from gross income of the expenses of the Puerto Rican branches. A draft of a "closing agreement" was prepared. In this draft was inserted a liquidation schedule computed by the Treasury Department, and checked and approved by the Bank. The schedule showed that the principal amount of $122,658.08 was due complainant on account of withholding

---

[1] "Every national banking association operating foreign branches shall conduct the accounts of each foreign branch independently of the accounts of other foreign branches established by it and of its home office, and shall at the end of each fiscal period transfer to its general ledger the profit or loss accrued at each branch as a separate item."

taxes which had been erroneously paid to the Treasurer on the item of "interest paid" by the Puerto Rican branches to the New York office for the years 1930–34, inclusive. On the other hand, the principal sum of $34,846.26 was shown to be due by the Bank to the Treasurer by reason of a scaling down in the amount of deduction taken for the "interest" paid to the New York office to correspond with the actual cost of the funds as determined in accordance with the formula approved by the Treasurer. The net principal amount of the balance thus to be refunded to the Bank was, according to the liquidation schedule, $87,811.82.

The Treasurer decided to submit the draft of the closing agreement to the Attorney General for his opinion. Upon the strength of the Attorney General's opinion dated August 7, 1937, which need not now be set forth, the Treasurer declined to execute the closing agreement, and he has since refused to credit or refund the withholding taxes collected for the years 1930–34.

However, the Treasurer subsequently took action which the court below found to be a ratification of his earlier determination that the "interest" credited to the New York office by the Puerto Rican branches cannot be considered as interest for income tax purposes. On April 18, 1938, the Treasurer modified the deficiency assessments served upon the Bank on February 17, 1937, and referred to above. As modified, the deficiency assessments, while disallowing the deduction for "interest paid", as such, permitted the Bank to deduct from gross income, in lieu of the so-called "interest" item, the cost of supplying funds for use by its Puerto Rican branches, which cost, computed in accordance with the formula previously mentioned, was less than the "interest" payments credited to the New York office.[2]

The attitude of the Treasurer is described by the court below, not unfairly, as follows:

"Thus, insofar as the Treasurer's determination that this 'interest' is fictitious necessitates the assessment of additional taxes, the Treasurer demands the additional taxes, but insofar as this determination involves the credit or refund of taxes, the Treasurer has refused to make the refund or enter the credit on his books."

Before examining the theory on which an injunction was granted by the court below, we shall refer to the remedies available under Puerto Rican law to taxpayers who have paid taxes not legally due.

The statute involved is the Income Tax Act of 1924 (Laws of Puerto Rico, 1925, p. 400).

Under §§ 57, 60, 62, and 76 (a) of the Act, the taxpayer who thinks no tax is legally due may in his return declare no taxable amount and await a deficiency assessment by the Treasurer. Upon notification of such an assessment the taxpayer may within 30 days file an appeal with the Board of Review and Equalization. If the Board upholds the Treasurer "the taxpayer shall pay under protest such tax as shall have been levied on him within the time specified and within 30 days subsequent to such payment under protest he may bring proper suit in a proper court, against the Treasurer of Porto Rico". This procedure was not followed by the Bank in the present case with reference to the withholding taxes paid for the years 1930–34.

Other sections of the statute provide for the situation where there has been an erroneous overpayment not as a result of a deficiency assessment (§§ 54, 55, 64, 75, 76(b)). The taxpayer may within four years after payment file with the Treasurer a claim for credit or refund. Under § 75 the Treasurer is authorized to remit or refund taxes erroneously collected and is directed to make an annual report to the legislature of all transactions under this section. However, in Bonet v. Yabucoa Sugar Co., 306 U.S. 505, 59 S.Ct. 626, 627, 83 L.Ed. 946, the Supreme Court upheld the Supreme Court of Puerto Rico in construing § 75 to mean "that the Treasurer's refusal to refund taxes not paid under protest is final; that the local statutes grant the courts no jurisdiction to review this refusal; and that after the Treasurer's report to the legislature, a voluntary taxpayer's complaint must be addressed to the legislature". In the present case, though the Bank paid without awaiting a deficiency assessment and availing itself of the statutory procedure with reference to deficiencies, it did formally make the payments "under protest". It may be that the Bank, having filed timely claims for refund of

---

[2] Since the argument, we have been informed by counsel that these deficiency assessments have been paid under protest, and that the Treasurer has denied claims by the Bank for credit or refund.

taxes thus paid under protest, would be entitled to sue the Treasurer under § 76 (b).[3] We intimate no opinion on this point.[4] The decision in Bonet v. Yabucoa Sugar Co., supra, emphasizing as it does that the taxes there were paid without protest, may not be controlling. It is not necessary to examine this question now; for present purposes it suffices to say that the statute provided at least one procedure, and perhaps two, by which the Bank could have paid the withholding taxes for 1930–34 and sued the Treasurer to recover them back.

On March 9, 1938, the Bank filed with the Treasurer its income tax return for the year 1937, from which it appeared that a tax of $41,590.33 was payable. There is no dispute that this was the correct amount of the tax. The return was accompanied by a letter in which the Bank advised the Treasurer that it elected to pay this tax by setting off against the amount payable an equal part of the larger amount for which the Bank claimed to be entitled to credit by reason of its erroneous payment for the year 1930 of the withholding tax on "interest" credited to its New York office.[5] The Treasurer refused to recognize the set-off and on April 23, 1938, formally demanded payment under threat of commencing summary proceedings to enforce collection of the tax. Thereupon the Bank filed the present suit to restrain the threatened attachment. On March 11, 1939, the Bank filed with the Treasurer its income tax return for the year 1938 from which it appeared that a tax of $33,886.91 was payable. The amount is not in dispute. The return was accompanied by a letter in which the Bank advised the Treasurer that it elected to pay this tax by setting off against the amount due the balance of the amount for which the complainant was entitled to credit by reason of its erroneous payment of the withholding tax on "interest" in 1930, plus the amount for which the Bank claimed credit by reason of a similar payment of the withholding tax for the year 1931. Again the Treasurer refused to recognize the set-off and threatened summary pro-

ceedings if the tax was not paid in cash, and the Bank thereupon filed its supplementary bill to restrain the threatened attachment.

The court below said:

"The injunction sought is not for the purpose of restraining the collection of the tax, for the amount and the validity of the tax are not in question. It is rather for the purpose of preventing defendant from distraining property for the collection of a tax which has been paid, or would be paid if defendant complied with his plain statutory duty and made certain entries in his books."[6]

Again, the court said:

"* * * it may well be said that the tax in this case has actually been collected, and for this reason this cannot be considered a suit to enjoin the collection of a tax."

As we have previously indicated, it may be doubted whether a taxpayer, who has made a payment without awaiting a deficiency assessment (even though he made the payment "under protest") and who has thereafter filed a claim for refund, has any recourse to the courts to review a determination by the Treasurer that there was no overpayment. The Bank contends that this question is not now involved, because here the Treasurer has made a determination in the taxpayer's favor that the sums credited by the Puerto Rican branches to the New York office were not really "interest", and the Treasurer, though arbitrarily refusing to credit or refund the amount of the withholding taxes collected for 1930–34, has still adhered to his determination that the item in question was not really "interest", in that he has collected deficiency assessments for the years 1933, 1934 and 1935, based on a disallowance of the deduction from gross income of the item of "interest paid".

It is argued that once the Treasurer has determined that an overpayment has been made, he has a plain ministerial duty, under §§ 55, 64(a), and 75 of the Income Tax Act, to make the corresponding credit or refund, and that the performance

---

[3] It appears that such a suit is now pending in the District Court for recovery of the withholding taxes paid for the year 1930.

[4] The language of the statute is quite confusing. See the three opinions filed in Porto Rico Fertilizer Co. v. Sancho, 1 Cir., 98 F.2d 398.

[5] See footnote 3, supra.

[6] At another point in its opinion the court below said: "This is a suit in Equity to enjoin the Treasurer from distraining property to collect the 1937 and 1938 income taxes * * *."

of this duty could have been compelled by mandamus. See Sancho v. Serralles, 1 Cir., 106 F.2d 125. On the other hand, the Treasurer insists that his authority under the law to allow a credit or refund of overpayments is a delegation of "legislative power" exercisable as a matter of grace; that his refusal, as here, to grant such credit or refund, cannot be reviewed by the courts, by mandamus or otherwise.

Whether mandamus would lie, either in the insular courts or in the United States District Court for Puerto Rico, we need not now decide. Assuming that mandamus is an available remedy, it does not follow that "an injunction is proper to restrain the defendant from acting affirmatively in violation of his plain ministerial duty", as stated by the court below. An injunction would not be proper in any case where its effect is to restrain the collection of taxes, because such an injunction is forbidden by the Butler Act. The considerations of policy which led Congress to deprive the United States District Court for Puerto Rico of jurisdiction to entertain suits to restrain the collection of taxes, are not applicable to the same degree to the writ of mandamus. If mandamus were sought, the present collection and receipt into the public treasury of income taxes admittedly due for the current years would not be interfered with during the litigation and pending the final determination of the rights of the parties with respect to alleged overpayments in earlier years.

We come back, then, to the Butler Act, and hold that it means what it says. Counsel point to Miller v. Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422, and Allen v. Regents, 304 U.S. 439, 58 S.Ct. 980, 82 L.Ed. 1448, decisions under the similar provision of R.S. § 3224, 26 U.S.C.A.Int.Rev.Code, § 3653(a), as indicating that the prohibition against injunctions is subject to implied exceptions in "special and extraordinary circumstances." But as the Circuit Court of Appeals for the Second Circuit said in Concentrate Mfg. Corp. v. Higgins, 90 F.2d 439, 440: "Although we cannot therefore say that there are no exceptions, they are at best only when the taxpayer is put to the direst necessity, and can make out a case of gross and indisputable oppression, without adequate remedy at law."

No such extreme situation seems to be present in the case at bar.

If the Bank is legally entitled to a set-off as against its liability for 1937 and 1938 income taxes, the statute offers a procedure by which this question can be raised. The Treasurer in his brief states:

" * * * it is to be remembered that the bank has not yet paid these 1937 or 1938 taxes. There appears, therefore, to be nothing to prevent the bank from now filing amended tax returns for those years, setting up its claims that these taxes are really to be considered as paid in full by the refunds which it claims to be due to it on these old 1930 to 1934 taxes, and that, accordingly, there is nothing really due at all on the 1937 or 1938 taxes, and making its amended tax returns show that claim. Thereupon the Treasurer's refusal to accede to that claim, and his demand for the payment of the full 1937 and 1938 taxes, disregarding such off-set claims, would be, technically, beyond question, a determination of a 'deficiency' within Section 56 of the statute, enabling the bank then to proceed by the settled judicial statutory remedy by appeal to the Board, and in case of the Board's decision against it, by payment under protest and suit for refund within thirty days under Section 76(a)."[7]

If the taxpayer is not legally entitled to the credit as against the 1937 and 1938 taxes, then possibly the Bank is now without any remedy for the recovery of the withholding taxes erroneously paid in earlier years. We do not say that the Bank is in this predicament, but if it is, the Bank's plight results from its failure

---

[7] It may be suggested that the original returns filed by the Bank for the years 1937 and 1938 virtually did what the Treasurer suggests could now be done by amended returns. The original returns were accompanied in each instance by a letter (which might be considered part of the return) stating that no remittance accompanies the return because the liability for 1937–1938 taxes has been extinguished by the compensating set-off on account of refunds due the Bank for with-

holding taxes erroneously paid in previous years, invoking §§ 1149–1156 of the Civil Code of Puerto Rico (Ed.1930). Thereafter the Treasurer wrote the Bank a letter rejecting this claim of set-off and demanding payment of the current taxes upon pain of instituting summary proceedings. This may perhaps be equivalent to a deficiency assessment, demanding payment of sums in excess of what the taxpayer calculates to be owing.

to follow the statutory procedure for contesting the imposition of taxes claimed not to be legally due. Such a result would no doubt be unfortunate, but it is hardly such a "special and extraordinary circumstance" as would justify the court below in coming to the rescue of the Bank by the issuance of an injunction against the collection of income taxes for the current years.

The decree of the District Court is vacated and the case remanded to that court, with directions to dismiss the suit for lack of jurisdiction.