COORS BREWING COMPANY,
Plaintiff,

v.

Sila M. CALDERON, Governor of the
Commonwealth of Puerto Rico,
Defendant.

Civil Case Number 02–1483(RJL).

United States District Court,
District of Columbia.

Sept. 6, 2002.

Donald Mitchell Griswold, McDermott, Will & Emery, Washington, DC, for plaintiff.

Charles Justin Cooper, Cooper & Kirk, PLLC, Washington, DC, for defendant.

## MEMORANDUM ORDER

LEON, District Judge.

On May 30, 2002, Governor Sila Calderon of Puerto Rico, defendant, signed into law a new beer tax law ("New Beer Tax").[1] The New Beer Tax amended the existing beer tax ("Old Beer Tax") by increasing the top rate and introducing a new graduated scale of rates based upon the level of production. For example, prior to the enactment of the New Beer Tax, all brewers who manufactured more than 31 million gallons in the preceding year were taxed at a general rate of $2.70 per gallon of beer produced; all others were taxed at a lower rate of $2.15 per gallon. The New Beer Tax, by contrast: (1) increased the tax rate to $4.05 per gallon for those who produced over 31 million gallons annually;

1. P.R. Laws Ann. tit. 13, §§ 4002 and 4023.

(2) retained the tax rate of $2.15 per gallon for those who manufactured less than 9 million gallons annually; and (3) added four categories in between with a new per gallon tax rate for each (i.e., 9 to 10 million ($2.36/gallon)); 10 to 11 million gallons ($2.57 per gallon); 11 to 12 million gallons ($2.78 per gallon) and 12 to 31 million gallons ($2.99 per gallon). The only brewer qualifying for the unchanged lower tax rate is the only brewery on the island of Puerto Rico: Cerveceria India.[2]

The new progressive tax for brewers went into effect on June 14, 2002. That same day, Coors and a group of off island beer distributors and brewers filed a challenge to the New Beer Tax's Special Exemption against, inter alia, the Commonwealth of Puerto Rico, the Secretary of the Treasury of Puerto Rico, Cerveceria India, and CCI Beer Distributors in the local court of Puerto Rico, (i.e., the Court of First Instance) claiming that this unchanged tax rate of $2.15 per gallon for manufacturers who produced under 9 million annually was, in effect, a "Special Exemption" in violation of the Dormant Commerce Clause, of the U.S. Constitution. Plaintiffs in that case also filed an application for a preliminary injunction, similar to the one before this Court, asking the local court to order the Secretary of the Treasury to collect the $4.05 per gallon tax

from all beer producers, regardless of gallonage produced.

As expected, the defendants in this Puerto Rico action moved to dismiss the off island distributors' case, and the local trial court held a hearing on July 23, 2002. Following that hearing, Coors decided to voluntarily dismiss itself from the case. Three days later, July 26, 2002, Coors filed the instant action in the U.S. District Court for the District of Columbia.

This Court was assigned that case on August 6, 2002. An oral argument on Coors' motions was set for August 8, 2002. At that argument Coors contended that the lengthy delays in the Puerto Rico court to date and the likelihood that any ruling would come too late to abate Coors' continuing irreparable injury had forced it to pursue relief here.[3]

Coors contends that rather than returning to the previous tax scheme and preserving the status quo, it needs an order from this Court directing Governor Calderon to require all producers to pay the full tax rate under the New Beer Tax: $4.05 per gallon. In effect, Coors is seeking an order imposing a flat tax rate on all beer producers. Moreover, Coors bases its request for this extraordinary relief upon an unproven factual assumption: that the recent change in the tax code is the cause of its alleged loss of market share in Puerto Rico since June 14, 2002.[4]

**2.** See Pl.'s Mem. Supp. Prelim. Inj. at 5. Coors further contends that the Puerto Rico legislature was "motivated by economic protectionism" to protect its only local brewer (i.e., Cerveceria India) when it drafted the Special Exemption to the New Beer Tax. Id. at 6.

**3.** Off island distributors and brewers filed a suit challenging the New Beer Tax—Associacion Puertorriquena de Importadores de Cerveza, et al. v. Estado Libre Asociado do Puerto Rico, Civil No. KPE 02–1282—in the local Puerto Rico court. That suit was dismissed on August 16, 2002. The Court of First In-

stance held that the Puerto Rico legislature did not intend to discriminate against off island brewers when it passed the New Beer Tax, and that the tax, in fact, did not discriminate against those brewers because it applies to all brewers on the basis of gallonage produced, rather than the origin of the beer.

**4.** The Court finds the causal connection, if any, between the increase in beer tax and alleged decrease in Coors' market share to be highly speculative at this point. Moreover, even if Coors could establish a causal connection between the loss in market share and the

Although some amount of limited discovery would undoubtedly be necessary to evaluate the extent, if any, of this casual relationship, this Court is unable to reach the merits of Coors' temporary restraining order and preliminary injunction because it lacks subject matter jurisdiction under the Butler Act and Tax Injunction Act. Accordingly, for the reasons set forth below, plaintiff's applications for a temporary restraining order and for a preliminary injunction are denied, and its suit is dismissed with prejudice.

## Subject Matter Jurisdiction Over the New Beer Tax

■ The Butler Act, 48 U.S.C. § 872, prohibits the United States District Court for the District of Puerto Rico from entertaining any suit "for the purpose of restraining the assessment or collection of any tax imposed by the laws of Puerto Rico." The Tax Injunction Act, 28 U.S.C. § 1341, by comparison states that "district courts shall not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under State law where a plain, speedy, and efficient remedy may be had in the courts of such State." While the Butler Act applies specifically to challenges of Puerto Rico's tax laws, the Tax Injunction Act applies more broadly to any challenge of a tax under state law. These statutes, however, have usually been construed *in pari materia*,[5] and this case poses no reason to depart from that practice.

Coors maintains that neither the Butler Act, nor the Tax Injunction Act, prohibit this Court from exercising subject matter jurisdiction over its challenge to the constitutionality of the New Beer Tax. The plain language of the Butler Act, according to Coors, dictates that only the United States District Court for the District of Puerto Rico is precluded from hearing suits to restrain the imposition of Puerto Rico's tax laws. All other federal district courts, according to Coors, may properly exercise subject matter jurisdiction over constitutional challenges to Puerto Rico's tax laws. Moreover, Coors contends that the Tax Injunction Act does not prohibit a challenge in this or any other federal district court of Puerto Rico's tax laws, because Puerto Rico is not a "state", and its tax laws are not immune from review in the federal courts outside of Puerto Rico. For the following reasons, the Court rejects Coors' interpretation and application of the Butler and Tax Injunction Acts.

First, with respect to Coors' contention that the Butler Act should be construed literally to prohibit these types of challenges only in the United States District Court for the District of Puerto Rico and not in the other District Courts of the United States, the Court believes that the practical impact of that interpretation of the Butler Act would directly undermine the legislative concern which prompted the passage of the Butler Act: the avoidance of the crippling effect of federal litigation on the fiscal operation of Puerto Rico.[6] See

tax increase, it would still need to prove the impact on the company's profitability.

5. *See Trailer Marine Transport Corp. v. Vazquez*, 977 F.2d 1, 5 (1st Cir.1992) (citing *Parker v. Agosto–Alicea*, 878 F.2d 557, 559 (1st Cir.1989)).

6. Coors points to statements by Senator Bingham discussed by the court in *Sancho v. National City Bank*, 112 F.2d 998, 998–99 (1st

Cir.1940), as support for the proposition that the Butler Act does not apply outside the District Court of Puerto Rico, that is, that suits challenging Puerto Rico tax laws may be brought in any District Court in the United States except the District Court for Puerto Rico. In particular, Coors offers this statement from Senator Bingham which was cited by the court in *Sancho:*

I will state that the change in the existing law is this: The Organic Act of Porto Rico

*United States Brewers Ass'n Inc., et al., v. Perez*, 592 F.2d 1212, 1215 (1st Cir.1979), citing *Tully v. Griffin*, 429 U.S. 68, 73, 97 S.Ct. 219, 50 L.Ed.2d 227 (1976). Indeed as the First Circuit itself concluded: pursuing in any of the various district courts of the United States federal court litigation which seeks to either enjoin the imposition of a new tax or assess an equal tax on smaller producers, is bound to "disrupt the orderly collection and administration of state taxes." *United States Brewers Ass'n*, 592 F.2d at 1214.

■ Moreover, the importance of judicial restraint when presented with a challenge to state tax law is well settled and cannot be over stressed. In *Tully v. Griffin*, 429 U.S. 68, 73, 97 S.Ct. 219, 50 L.Ed.2d 227 (1976) the Supreme Court noted that courts have an "equitable duty" to refrain from involvement in state collection of taxes. The Tax Injunction Act is a longstanding reflection of that "policy of restraint". *Id.* Where a state acts under its constitutional authority to pass a tax, as Puerto Rico did here, then as Chief Judge Coffin said in *U.S. Brewers:* "[s]ound equi-

ty practice and a concern for interests of federalism" bar the type of injunctive relief being sought here.[7]

The Court does not find the application of these principles to the Tax Injunction Act to be any less applicable simply because Puerto Rico is a Commonwealth, rather than one of the fifty states. In fact, the Tax Injunction Act was applied in *35 Acres Associates v. Adams*, 962 F.Supp. 687, 690 (D.Vi.1997), to preclude federal subject matter jurisdiction over a challenge to a tax law imposed by the Virgin Islands. While, as Coors points out, the court in *35 Acres* did not expressly hold that United States territories are "states" for the purposes of the Tax Injunction Act, it determined that the Tax Injunction Act was nonetheless applicable because the same principles of federalism and equity that prevent challenges to state tax law from being brought in district court, necessarily preclude subject matter jurisdiction over a challenge to a territory's tax policy.[8]

■ The Butler Act and the Tax Injunction Act, construed together, evidence

does not carry to Porto Rico the general statutes of the United States. Consequently, it has been possible and has proved an extremely dangerous thing in the government of Porto Rico for taxpayers to secure an injunction against paying Porto Rico taxes in the court of the United States, in the district of the United States for Porto Rico; and thereby, instead of following our practice—which is to pay the tax first and then take an appeal—they do not pay the tax at all.

This Court does not find that this statement contradicts what it finds to be the policy underlying both the Butler Act and the Tax Injunction Act: that recourse in the federal courts for challenges to local tax laws interferes with the ability of local governments to administer local taxes. In fact, Senator Bingham's statement reflects a concern that without the Butler Act, taxpayers could delay or avoid paying Puerto Rico's taxes by seeking relief in the District Court for Puerto Rico.

7. *United States Brewers Ass'n*, 592 F.2d at 1215.

8. The Commonwealth of Puerto Rico possesses "autonomy similar to that of the states and incorporated territories," which makes the consideration of federalism and equity principles all the more important. *People of Puerto Rico v. Shell Co.*, 302 U.S. 253, 261–62, 58 S.Ct. 167, 82 L.Ed. 235 (1937) (explaining that the "aim of the Organic Act" was to provide Puerto Rico with "autonomy similar to that of the states.... The effect was to confer upon [Puerto Rico] many of the attributes of quasi-sovereignty possessed by the states—as, for example, immunity from suit without consent.... By those acts, the typical American governmental structure, consisting of the three independent departments—legislative, executive, and judicial—was erected.... The power of taxation, the power to enact and enforce laws, and other characteristically governmental powers were vested.").

a strong legislative policy in favor of resolving challenges to local tax laws in local courts. This is especially true where, as here, a local court remedy in the Commonwealth's own courts is "plain, speedy and efficient."[9] Coors has not maintained, nor could it, that Puerto Rico's courts do not provide an adequate opportunity for a full hearing and judicial determination of the controversy that is now before this Court.[10] To wit, the Commonwealth's Court of First Instance held a hearing on July 23, 2002, the same day Coors voluntarily dismissed its suit in the Puerto Rico court. The claims of Coors' fellow producers and distributors were fully briefed and the court dismissed the plaintiffs' challenge to the New Beer Tax in an opinion filed August 16, 2002. Further, if the distributors are not satisfied with the determination of that Puerto Rico court, appellate review is available both in the Commonwealth's Supreme Court and in the Supreme Court of the United States.[11]

Finally, Coors' argument that the Butler Act and Tax Injunction Act foreclose subject matter jurisdiction only in those instances where a party seeks to *enjoin* the collection of taxes, thereby decreasing a state's tax revenues, is similarly unconvincing as a thinly veiled attempt to circumvent the clear will of Congress. This argument by Coors is no stronger today than it was twenty three years ago when the First Circuit rejected it in the *U.S. Brewers* case.

■ There, as here, the distributors contended that the local court should enjoin the Governor from applying the lower beer tax rate for small brewers and, in effect, require the government to collect the same tax from all producers.[12] The effect of such an order, of course, would be to impose a new flat tax scheme that was not considered or approved by the legislature. Chief Judge Coffin in *U.S. Brewers* characterized such an order as "a particularly inappropriate involvement in a state's management of its fiscal operations."[13] This Court agrees with that characterization and in due consideration of the principles of federalism and equity cited by the First Circuit, concludes that this distinc-

---

**9.** 28 U.S.C. § 1341. Although the Butler Act does not expressly provide an exception to its prohibition on federal court jurisdiction over challenges to state tax policy, as the Tax Injunction Act so provides when a plain, speedy and efficient remedy is available, the court in *United States Brewers Ass'n,* 592 F.2d at 1212–13, added that "gloss" to the statute. *Parker v. Agosto–Alicea,* 878 F.2d 557, 558–59 (1st Cir.1989); *see also Carrier Corp. v. Perez,* 677 F.2d 162, 164 (1st Cir.1982) (explaining that the court in *United States Brewers Ass'n* held that the Butler Act "is to be applied like the Tax Injunction Act ... which prohibits federal courts from enjoining, suspending or restraining the assessment, levy or collection of a state tax 'where a plain, speedy and efficient remedy' may be had in the state courts.").

**10.** *See Rosewell v. LaSalle National Bank,* 450 U.S. 503, 514, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981).

**11.** *See Carrier,* 677 F.2d at 164 (affirming the District Court of Puerto Rico's dismissal of plaintiff's challenge to a Puerto Rico tax for want to subject matter jurisdiction under the Butler Act because the plaintiff was "free to make all the arguments that it makes here in those proceedings before the courts of Puerto Rico, and, if appropriate, before the Supreme Court of the United States.").

**12.** *See United States Brewers Ass'n,* 592 F.2d at 1212 (explaining that plaintiffs sought the court to "declare invalid those portions of the Act exempting smaller producers from the heightened tax and to enjoin defendants from collecting a lower tax from local producers than that collected from beer producing plaintiffs outside of Puerto Rico.").

**13.** *Id.* at 1215.

tion by Coors is still an unpersuasive basis to reject the application of the Butler and Tax Injunction Acts.[14]

For the reasons set forth above, the Court denies Coors' Motions for a Temporary Restraining Order [# 5] and Preliminary Injunction [# 3] and dismisses its suit with prejudice for want of subject matter jurisdiction.

SO ORDERED.

---

14.  See *In re Gillis*, 836 F.2d 1001, 1008 (6th Cir.1988) (explaining that even where "parties seek to force the collection of additional taxes, the interference by the federal courts into the state tax system is the same in degree and kind as a suit seeking to enjoin a state tax") (emphasis added).