# United States Court of Appeals
## For the First Circuit

No. 11-1559

COORS BREWING COMPANY,

Plaintiff, Appellant,

v.

JUAN CARLOS MÉNDEZ-TORRES, Secretary of the Treasury
Department of the Commonwealth of Puerto Rico,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Lipez, Circuit Judges.

Helgi C. Walker, with whom William S. Consovoy, Claire J. Evans, Brett A. Shumate, Wiley Rein LLP, Pedro Jiménez, and Adsuar Muñiz Goyco Seda & Pérez-Ochoa, P.S.C. were on brief, for appellant.
Susana I. Peñagarícano-Brown, Assistant Solicitor General, with whom Irene S. Soroeta-Kodesh, Solicitor General, Leticia Casalduc-Rabell, Deputy Solicitor General, and Zaira Z. Girón-Anadón, Deputy Solicitor General, were on brief, for appellee.

April 27, 2012

**LYNCH, Chief Judge**.  The question presented in this case is whether the Supreme Court's decision in Levin v. Commerce Energy, Inc., 130 S. Ct. 2323 (2010), requires the federal courts to refrain from exercising jurisdiction over this case, a dormant Commerce Clause attack on Puerto Rico's differential taxation of categories of brewers.  We answer that question affirmatively and affirm the district court's dismissal on comity grounds.

Puerto Rico has classified Coors Brewing Co. ("Coors") as a "large brewer" under its beer tax schedule and accordingly taxes Coors at a higher rate than it taxes "small brewers," including local Puerto Rico brewer Cervecería India.  In 2006, Coors brought suit in federal district court against Juan Carlos Méndez-Torres, Puerto Rico's Secretary of the Treasury Department (the "Secretary"), challenging this differential treatment under the dormant Commerce Clause.  The district court originally dismissed the case on comity grounds, but in 2009, this court reversed that decision, interpreting the Supreme Court's decision in Hibbs v. Winn, 542 U.S. 88 (2004), to conclude that neither comity nor any federal statute barred Coors from seeking relief from the state taxation scheme in federal court.  Coors Brewing Co. v. Méndez-Torres (Coors Brewing Co.), 562 F.3d 3 (1st Cir. 2009).

On remand to the district court, the parties moved toward a final resolution of the case, stipulating to resolve Coors's motion for summary judgment before any other matter pending in the

-2-

case. As it turned out, the Supreme Court interpreted Hibbs differently than we predicted. On June 1, 2010, the Supreme Court decided Levin, which expressly abrogated this court's 2009 Coors Brewing Co. decision.

On July 14, 2010, the Secretary moved the district court to dismiss the case based on Levin. The district court then issued an opinion in which it reached Coors's motion for summary judgment, which it denied, before granting the Secretary's motion to dismiss on grounds of comity.

Coors has appealed both decisions, arguing primarily that the Secretary consented to resolving this case in federal court, and that, even if he had not, the Puerto Rico courts do not provide the "plain, adequate, and complete" forum required under comity, and that equity requires reversal here for other reasons.

Because we find that the Secretary has not consented to litigate this case in federal court, and because we have long found the Puerto Rico courts to provide an "adequate state forum" for the adjudication of federal constitutional claims, and no other grounds justify retention of jurisdiction, we affirm the district court's grant of the Secretary's motion to dismiss. We also vacate the district court's merits ruling denying Coors summary judgment; it will have no effect on any later proceedings in the courts of Puerto Rico.

We do not address the merits of Coors's challenge to the beer tax regime and make no ruling as to the validity of that regime under the dormant Commerce Clause. Should Coors choose to pursue its case in the Puerto Rico courts, it may press its federal constitutional claims there and, should it receive an unfavorable disposition, it may seek further review of any substantial federal claims in the U.S. Supreme Court. Pleasures of San Patricio, Inc. v. Méndez-Torres, 596 F.3d 1, 7 (1st Cir. 2010).

I.

Puerto Rico has a long history of differentiating in its beer excise tax between "small" and "large" brewers, and the "large" brewers have a long history of bringing challenges to this differentiation. In 1969, Puerto Rico first imposed a uniform excise tax of $0.75 per gallon on all beer sold within the Commonwealth. P.R. Law 143 of June 30, 1969. In 1978, the legislature began differentiating within this tax between "large brewers," those producing more than 31 million gallons annually, and "small brewers," those producing less than that amount. That same year, the tax on large brewers was raised to $1.60 per gallon, while the tax on small brewers was set at $1.05 per gallon. P.R. Law 37 of July 13, 1978. This $0.55 differential between large and small brewers held steady until 2002, when the legislature amended the law to increase the difference to $1.90 per gallon. The large brewer tax was raised to $4.05 per gallon; the small brewer tax to

$2.15 per gallon, and four intermediate gradations were added in between.[1]  P.R. Laws. Ann. tit. 13, § 9521 (2002).  In 2004, the legislature again amended the regime, this time, to permit small brewers to pay the tax rates for each of the respective lower gradations, so long as their total per annum production remained below 31 million gallons.  P.R. Laws. Ann. tit. 13, § 9574 (2004).

A.    Early Litigation

Since the 1978 amendments, Puerto Rico's beer tax has undergone almost continuous litigation in state and federal court. In 1978, the United States Brewers Association ("USBA") brought initial challenges to the tax regime in both the federal district and Puerto Rico courts.  Under the Butler Act, 48 U.S.C. § 872, a close analogue to the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341,[2] the federal district court directed USBA to seek a

---

[1]    As of 2002, the gradations within the excise tax were as follows:

| Gallons Produced | Tax Rate (/gal.) |
| --- | --- |
| 0 to 9 million | $2.15 |
| 9 to 10 million | $2.36 |
| 10 to 11 million | $2.57 |
| 11 to 12 million | $2.78 |
| 12 to 31 million | $2.99 |
| Over 31 million | $4.05 |

P.R. Laws Ann. tit. 13, § 9521 (2002).

[2]    Under the Butler Act, "No suit for the purpose of restraining the assessment or collection of any tax imposed by the laws of Puerto Rico shall be maintained in the United States District Court for the District of Puerto Rico."  48 U.S.C. § 872. The TIA, which is not applicable to Puerto Rico, reads: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a

decision in state court on the merits of the tax challenge, but retained jurisdiction over the suit in the event the state courts failed to provide a "plain, speedy and efficient remedy."  U.S. Brewers Ass'n v. Cesar Perez, 455 F. Supp. 1159, 1164 (D.P.R. 1978) (internal quotation marks omitted).

USBA accordingly brought its case in state court, where it lost on the merits.  The Puerto Rico Superior Court rejected USBA's various constitutional and other challenges to the tax and dismissed the complaint, U.S. Brewers Ass'n v. Perez, Civ. No. PE-78-1137 (Dec. 12, 1978), and the Puerto Rico Supreme Court upheld the dismissal, U.S. Brewers Ass'n v. Sec'y of the Treasury (U.S. Brewers P.R.), 109 P.R. Dec. 456, 9 P.R. Offic. Trans. 605 (1980).

Meanwhile, USBA appealed the federal district court's decision to this court, arguing that the Butler Act did not bar federal jurisdiction over the action since USBA was not seeking to reduce Puerto Rico's tax revenue.  This court rejected that argument, holding that the action was barred by considerations underlying the Butler Act, namely "equity practice, . . . principles of federalism . . . and the imperative need of a State to administer its own fiscal operations," U.S. Brewers Ass'n v. Perez (U.S. Brewers), 592 F.2d 1212, 1214 (1st Cir. 1979)

---

plain, speedy and efficient remedy may be had in the courts of such State."  28 U.S.C. § 1341.

(omissions in original) (quoting <u>Tully</u> v. <u>Griffin</u>, 429 U.S. 68, 73 (1976)) (internal quotation marks omitted), and remanded to the district court for dismissal, <u>id.</u> at 1215.

Later, on the very same day the 2002 Amendments went into effect increasing the tax differential between small and large brewers to $1.90 per gallon, a new suit was filed attacking the new law. The Puerto Rico Association of Beer Importers ("PRABI"), of which Coors was then a member, challenged the new law in Puerto Rico Superior Court. PRABI argued that the special exemption for small brewers -- which favored local Puerto Rico brewer, Cervecería India -- violated the dormant Commerce Clause. The Superior Court dismissed the case, and the Puerto Rico Supreme Court affirmed. <u>Puerto Rican Ass'n of Beer Imps.</u> v. <u>Puerto Rico</u> (<u>Beer Imps.</u>), 171 P.R. Dec. 140 (2007), <u>cert. denied</u>, 552 U.S. 1257 (2008).

About two weeks after PRABI filed suit in Puerto Rico Superior Court, and before that court had ruled on the merits, Coors withdrew its claims without prejudice. Three days later, it initiated its own suit in the U.S. District Court for the District of Columbia, requesting a temporary restraining order and preliminary injunction against the enforcement of the new tax. The district court dismissed the suit with prejudice on jurisdictional grounds under the Butler Act. <u>Coors Brewing Co.</u> v. <u>Calderon</u> (<u>Calderon</u>), 225 F. Supp. 2d 22, 27 (D.D.C. 2002); <u>see</u> <u>also</u> <u>id.</u> at 26 ("Coors' argument that the Butler Act and [TIA] foreclose

subject matter jurisdiction only in those instances where a party seeks to enjoin the collection of taxes, thereby decreasing a state's tax revenues, is similarly unconvincing as a thinly veiled attempt to circumvent the clear will of Congress.").

On appeal, Coors settled the case, agreeing to a stipulation that the district court's judgment "determines with finality the Court's lack of jurisdiction but is without prejudice to the substantive claims that the Court lacked jurisdiction to address."

B. The Present Litigation over the 2004 Amendments

In 2004, the Puerto Rico legislature again amended the tax regime, this time to permit small brewers to take advantage of all five lower tax gradations. P.R. Laws. Ann. tit. 13, § 9574. In response to these amendments, on November 17, 2006, Coors filed suit in the U.S. District Court for the District of Puerto Rico. It is in this suit that Coors's present appeal is taken. The suit attacked the tax differential, sought a declaration that the "Special Exemption" for small brewers violated section three of the Federal Relations Act, 48 U.S.C. § 741a, as well as the dormant Commerce Clause, and requested additional declaratory and injunctive relief under 42 U.S.C. § 1983. See Complaint, Coors Brewing Co. v. Méndez-Torres, No. 3:06-cv-02150 (Nov. 17, 2006). The Secretary initially filed a motion to dismiss with prejudice on grounds that the district court lacked subject matter jurisdiction

-8-

under the Butler Act and TIA, on grounds of comity, and on grounds of collateral estoppel based on the earlier decisions in U.S. Brewers P.R., Beer Imps., and Calderon. The district court dismissed the case on jurisdictional and collateral estoppel grounds.

Coors made several arguments in its first appeal in this case. First, it challenged the district court's collateral estoppel ruling, arguing that its suit challenged the new, 2004 Amendments to the tax, and thus presented circumstances unaddressed in Calderon, Beer Imps. and U.S. Brewers P.R. It also argued that there had been an intervening change in the law since the district court dismissed its 2002 suit. In 2004, the Supreme Court decided Hibbs v. Winn, which held that the TIA did not bar a challenge by Arizona taxpayers to a tax credit for donations to school tuition organizations which were then permitted under state law to award tuition grants for religious schools. 542 U.S. at 92. The Supreme Court reasoned that Congress had only intended the TIA to bar federal jurisdiction in cases where state taxpayers sought to avoid paying state taxes or sought to decrease state tax revenues overall. Id. at 107. Extending this reasoning to the Butler Act, Coors argued that because it did not seek to decrease its own tax burden, but sought a higher tax rate on small brewers, neither comity not the Butler Act barred its requested relief.

As said, this court ruled in favor of Coors in 2009, holding that the suit was not precluded and that neither the Butler Act nor principles of comity barred the exercise of federal jurisdiction. Coors Brewing Co., 562 F.3d at 3. We briefly summarize the reasoning set forth in that opinion. First, we held that because Calderon merely found the federal courts to be without jurisdiction to address Coors's claims, and Hibbs altered the applicable legal standard, Calderon did not foreclose a new jurisdictional inquiry. 562 F.3d at 12. Under the logic of Hibbs, we held that the Butler Act did not bar federal jurisdiction over Coors's suit. 562 F.3d at 15-16. We also rejected the Secretary's comity argument, finding that Hibbs had narrowed the comity doctrine.[3] 562 F.3d at 18. Thus overruling our previous decision in U.S. Brewers, we reversed the district court's grant of the Secretary's motion to dismiss and remanded for further consistent proceedings. 562 F.3d at 22-23.

---

[3] In a footnote, the Hibbs majority had dispensed with the comity argument in that case by noting that traditionally, the Court has relied on comity "to preclude original federal-court jurisdiction only when plaintiffs have sought district-court aid in order to arrest or countermand state tax collection." Hibbs v. Winn, 542 U.S. 88, 107 n.9 (2004). This court joined several other circuit courts of appeal in reading this footnote broadly, see Commerce Energy, Inc. v. Levin, 554 F.3d 1094 (6th Cir. 2009), rev'd, Levin v. Commerce Energy, Inc., 130 S. Ct. 2323 (2010); Levy v. Pappas, 510 F.3d 755 (7th Cir. 2007); Wilbur v. Locke, 423 F.3d 1101 (9th Cir. 2005); but see DIRECTV, Inc. v. Tolson, 513 F.3d 119 (4th Cir. 2008) (construing Hibbs more narrowly), and as lifting the bar on federal court review of state tax challenges so long as the requested relief does not "arrest state revenue generation," Coors Brewing Co. v. Méndez-Torres, 562 F.3d 3, 18 (1st Cir. 2009).

At this point, the Secretary elected not to seek further review of this court's adverse decision in the U.S. Supreme Court. He requested two extensions of time to consider whether to seek certiorari, noting that the case presented issues of "exceptional importance" and that he must "carefully consider the issues involved and fittingly set forth the public policy of the new administration as well as the judicial ramifications." Ultimately, he elected not to seek certiorari.

C.   Procedural History Since Our 2009 Opinion

Soon after the mandate from this court issued in Coors Brewing Co., Coors renewed its motion for summary judgment, which it had initially filed on July 30, 2007. On July 16, 2009, the district court ordered the Secretary to show cause why the court should not grant Coors's motion. The Secretary responded in a motion requesting leave to conduct discovery pursuant to Rule 56(f), and the parties agreed to meet to resolve these discovery issues.

On November 2, 2009, the U.S. Supreme Court granted certiorari in Levin v. Commerce Energy, Inc., 130 S. Ct. 496, thus raising the issue of whether comity precluded a challenge to an allegedly discriminatory state taxation scheme even where the challenger did not seek to reduce state tax revenue. That petition had been filed on August 20, 2009, about three months after the mandate had issued in Coors Brewing Co. The Secretary did not

-11-

bring this relevant development to the attention of the district court at this juncture; indeed, he did not even mention the case until he filed his motion to dismiss, more than one month after the Supreme Court had decided Levin.

On December 23, 2009, the parties submitted a Joint Status Report in compliance with the district court's order, in which they informed the court that (1) they had agreed to limited discovery, (2) they would attempt to file a joint stipulation of certain facts within three months, and (3) they had "agreed to hold all other proceedings in abeyance until the Court rules on the Motion for Summary Judgment." After several additional discovery motions were filed, which the district court did not act upon, the parties filed their joint stipulation of facts in accordance with their agreement on March 16, 2010.[4]

On June 1, 2010, the Supreme Court decided Levin v. Commerce Energy, Inc., 130 S. Ct. 2323, reversing the U.S. Court of Appeals for the Sixth Circuit and abrogating this court's decision in Coors Brewing Co. On July 14, 2010, the Secretary filed a motion to dismiss in light of Levin; however, he did not seek relief from or even mention in this motion the stipulation agreement to hold all other matters in abeyance until a decision on summary judgment. In its opposition, Coors argued that by entering

_____

[4] On that same day, the Secretary filed a motion requesting relief from the agreement regarding discovery on other grounds not at issue here.

into the stipulation agreement on December 23, 2009, the Secretary had "voluntarily submitted" to a merits determination in federal court. In addition, Coors argued that even if Levin applied, comity did not justify dismissal in this case because the Puerto Rico courts would not provide a "plain, adequate, and complete remedy" for Coors's suit.

On December 29, 2010, the district court referred all pending motions in the case to a magistrate judge for a report and recommendation. On February 10, 2011, the magistrate judge recommended that Coors's motion for summary judgment be denied and the Secretary's motion to dismiss be granted. As an initial matter, the magistrate judge recommended that the district court bind the Secretary to the parties' agreement to resolve the summary judgment motion before any other matter, including the motion to dismiss, noting that the Secretary had agreed to the stipulation, and would not "suffer any manifest injustice from having the summary judgment motion decided first." Coors Brewing Co. v. Mendez-Torres, 787 F. Supp. 2d 149, 186 (D.P.R. 2011). The magistrate judge examined the merits of Coors's summary judgment challenge to the excise tax first, and recommended the motion be denied. Id. at 194. Then, turning to the motion to dismiss, the magistrate judge applied Levin and recommended the suit be dismissed. Id. at 198.

-13-

On February 17, 2011, having lost both on its motion for summary judgment and on the Secretary's motion to dismiss, Coors filed its objections to the report and recommendation. On March 7, 2011, the Secretary filed a lengthy response to Coors's objections, reasserting his comity claims under Levin and arguing that the stipulation agreement "did not require or constitute[] a waiver of the Secretary's arguments for dismissal on comity grounds" and should not be construed as a voluntary submission to federal jurisdiction.

On March 30, 2011, the district court issued an opinion and order adopting the magistrate's report and recommendation. Coors Brewing Co. v. Mendez-Torres, 787 F. Supp. 2d at 177. The court found that the Secretary had failed to "set forth any showing of good cause" as to why the stipulation agreement should be set aside, and addressed and denied Coors's summary judgment motion. Id. at 165, 173. It then granted the Secretary's motion to dismiss on grounds of comity. Id. at 177. Coors has appealed from both the dismissal and the denial of summary judgment.

II.

We review de novo the district court's grant of the Secretary's motion to dismiss. Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009).

In Levin, the Supreme Court expressly abrogated this court's decision in Coors Brewing Co. The Court held that in the

-14-

state taxation context, the comity doctrine is "[m]ore embracive than" the TIA and "restrains federal courts from entertaining claims for relief that risk disrupting state tax administration." 130 S. Ct. at 2328. The Court explained that Hibbs had not changed the basic principle that comity, a non-merits ground for dismissal, "counsels lower federal courts to resist engagement in certain cases falling within their jurisdiction."[5] Id. at 2330. Thus, even if the TIA does not bar federal court jurisdiction in certain classes of state tax challenges, comity may require dismissal nonetheless.

As a general matter, comity constrains the exercise of federal jurisdiction in cases implicating a variety of important state interests. See Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716-17 (1996). This includes cases that would interfere with a state criminal proceeding, see, e.g., Younger v. Harris, 401 U.S. 37 (1971), or with certain types of state civil proceedings, see, e.g., Huffman v. Pursue, Ltd., 420 U.S. 592 (1975); cf. Colo. River Water Conservation Dist. v. United States, 424 U.S. 800 (1976); cases in which a determination of the federal constitutional issue

---

[5]      In Hibbs, the Court held that neither the TIA nor comity posed a hurdle to reaching the merits of the plaintiffs' tax administration challenge in that case. However, in Levin v. Commerce Energy, Inc., the Court distinguished Hibbs on its facts, noting in particular that Hibbs had involved an Establishment Clause challenge. 130 S. Ct. 2323, 2335-36 (2010). Specifically, the Levin Court stated that "[a] confluence of factors . . . , absent in Hibbs, leads us to conclude that the comity doctrine controls [in the present case]." Id. at 2336.

-15-

might be made unnecessary by a state court interpretation of ambiguous state law, see R.R. Comm'n of Tex. v. Pullman Co., 312 U.S. 496 (1941); cases in which federal adjudication could interfere with a complex state administrative scheme, of which state judicial review is an integral part, see Burford v. Sun Oil Co., 319 U.S. 315 (1943); cases that implicate an important "sovereign prerogative" and in which the state's law is unclear, see La. Power & Light Co. v. City of Thibodaux, 360 U.S. 25 (1959); and cases in which the federal courts might unduly interfere with state tax administration, see Fair Assessment in Real Estate Ass'n v. McNary, 454 U.S. 100 (1981).

Levin made clear that the rule of comity carries "particular force" in this last context, where taxpayers file suit in federal court under either dormant Commerce Clause or Equal Protection theories, alleging that the state has singled them out for discriminatory treatment by taxing them unevenly in comparison to their competitors. Levin, 130 S. Ct. at 2330. There are several reasons for this strict rule. For one, "in taxation, even more than in other fields, legislatures possess the greatest freedom in classification." Id. at 2333 (quoting Madden v. Kentucky, 309 U.S. 83, 88 (1940)) (internal quotation marks omitted). Even "upon finding impermissible discrimination in a State's allocation of benefits or burdens," it is the Supreme Court's usual practice to remand the case to the state court,

"leaving the remedial choice in the hands of state authorities."
Id. at 2333-34.  This "leaves the interim solution in state-court hands, subject to subsequent definitive disposition by the State's legislature."  Id. at 2334.

By contrast, if the lower federal courts were to find a state tax system unconstitutional, they "lack authority to remand to the state court system [any] action initiated in federal court," and they are severely constrained in their choice of remedies.  Id. Further, federal judges are bound by the TIA and Butler Act, which preclude the diminishment of state revenues, even if that relief is the least disruptive of the state legislature's design.  Id. Finally, state courts have the ability to construe narrowly, where necessary, state statutory language so as to alleviate constitutional concerns.  Id. at 2334 n.7.  "These limitations on the remedial competence of lower federal courts counsel that they refrain from taking up cases of this genre, so long as state courts are equipped fairly to adjudicate them."  Id. at 2334.

The Levin Court discussed three factors which led it to conclude that comity required dismissal.  Id. at 2336.  First, it held that "respondents seek federal-court review of commercial matters over which [the state] enjoys wide regulatory latitude" and that "their suit does not involve any fundamental right or classification" to which heightened judicial scrutiny would attach. Id.  Second, the Court found that the plaintiffs sought to enlist

-17-

the aid of the federal courts "to improve their competitive position."  Id.  Finally, it held that state courts "are better positioned than their federal counterparts" to fashion a suitable remedy "because they are more familiar with state legislative preferences and because the TIA does not constrain their remedial options."  Id.; see also id. at 2334.  The Court held that while individually any one of these considerations might not compel dismissal, "in combination" they require it.  Id. at 2336.

The Court emphasized that none of these factors were present in Hibbs.  130 S. Ct. at 2336.  By contrast, all three factors applied in Levin, and all three plainly apply here.

First, Coors seeks review of regulatory matters over which Puerto Rico enjoys wide regulatory latitude under the Butler Act, 48 U.S.C. § 872.  The Supreme Court has recognized in Levin and numerous other cases that states enjoy wide regulatory latitude over the administration of their tax systems.  See Levin, 130 S. Ct. at 2330 n.2 ("The procedures for mass assessment and collection of state taxes and for administration and adjudication of taxpayers' disputes with tax officials are generally complex and necessarily designed to operate according to established rules. State tax agencies are organized to discharge their responsibilities in accordance with the state procedures.  If federal declaratory relief were available to test state tax assessments, state tax administration might be thrown into

-18-

disarray, and taxpayers might escape the ordinary procedural requirements imposed by state law." (citation and internal quotation marks omitted)). Further, Coors's suit does not implicate any fundamental right or classification that would require heightened judicial scrutiny. See id. at 2336.

Second, Coors is explicitly seeking to improve its competitive position with respect to Puerto Rico's local brewer, Cervecería India, and has framed its arguments around the competitive advantage that the tax differential bestows on that company. See id.

Third, Puerto Rico's courts are better positioned than are the federal courts to address and remedy any potential constitutional violations because they are more familiar with state legislative preferences and less constrained in their remedial options. See id.

III.

Coors presents three arguments as to why comity does not require dismissal here. Two are derived directly from Levin. First, Coors correctly notes that if a state "voluntarily chooses to submit to a federal forum, principles of comity do not demand that the federal court force the case back into the State's own system." Id. at 2336 (quoting Ohio Bureau of Emp't Servs. v. Hodory, 431 U.S. 471, 480 (1977)) (internal quotation marks omitted). Coors argues that the Secretary voluntarily consented to

have this case adjudicated in federal court by his actions and through a combination of waiver and sleeping on his rights.

Second, Coors argues that since dismissal on comity grounds is an equitable doctrine, even if the Secretary has not consented to have the case adjudicated in federal court, the unique history and circumstances of this case justify our exercise of equitable discretion to resolve the case on its merits.

Finally, Coors points to the condition underlying the comity doctrine itself, recognized in Levin, that there exist "an adequate state-court forum" competent "to hear and decide . . . constitutional claims." Id. at 2330. Coors argues that Puerto Rico does not meet this constitutional floor and will not, in this case, provide an adequate forum for the full and fair resolution of their constitutional claims. We reject each of these arguments for the reasons laid out below.

A.  Voluntary Consent

Coors's voluntary consent argument focuses on the actions and inactions of the Secretary -- what it characterizes as a pattern of failure by the Secretary to preserve and assert his claims -- after this court's remand in Coors Brewing Co. First, Coors argues that the Secretary and Solicitor General of Puerto Rico, at the highest level of tax and legal policymaking, abandoned the comity argument by not seeking certiorari from this court's 2009 decision in Coors Brewing Co. Further, Coors argues that the

Secretary should have been aware of and alerted the court to the Supreme Court's November 2, 2009, grant of certiorari in the parallel case of Levin.

Coors notes that instead of reserving his rights in light of the grant in Levin, the Secretary filed the stipulation agreement on December 23, 2009, in which he agreed to hold all other pending matters in abeyance until the district court ruled on the summary judgment motion. At no point did the Secretary mention Levin or reserve the comity issue. Not until the Supreme Court had decided the case half a year later did the Secretary finally raise Levin with the district court.

Furthermore, Coors stresses that once the magistrate judge recommended that the district court hold the Secretary to the stipulation agreement, and rule on the summary judgment motion before the motion to dismiss, the Secretary did not file any objections to the recommendation in district court and did not cross-appeal the issue to this court. Coors argues that as a result, the Secretary has waived the right to contest the district court's decision to enforce the stipulation agreement. Coors relies on several decisions of this court discussing waiver in this context. See, e.g., Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998) ("[A] party's failure to assert a specific objection to a report and recommendation irretrievably waives any right to review by the district court and the court of appeals.").

-21-

It is true that the Secretary could have sought certiorari in <u>Coors Brewing Co.</u> and likely should have kept the district court abreast of the developments in <u>Levin</u> even before the Supreme Court decided that case. However, the Supreme Court has made it clear that the rule of consent is a strict one: a state must "expressly urge [the federal court] to proceed to an adjudication of the constitutional merits." <u>Ohio Civil Rights Comm'n</u> v. <u>Dayton Christian Sch., Inc.</u>, 477 U.S. 619, 626 (1986).

This rule precludes a finding of voluntary consent to federal jurisdiction in this case. While we have found no "consent" case involving challenges to state tax laws, cases from other contexts help provide guidance. In <u>Dayton Christian Schools</u>, on facts similar to those here, the Court held that the district court should have abstained, under <u>Younger</u>, from deciding the case. Although the State had urged abstention in the district court and on appeal, the plaintiff in that case argued that the state nonetheless had waived its abstention claim because it had stipulated to the district court's jurisdiction. <u>Dayton Christian Sch.</u>, 477 U.S. at 626. The Supreme Court rejected this argument as "misconceiv[ing] the nature of <u>Younger</u> abstention," which "does not arise from lack of jurisdiction in the District Court, but from strong policies counseling against the exercise of such jurisdiction where particular kinds of state proceedings have already been commenced." <u>Id.</u>

The Dayton Christian Schools Court contrasted the facts of that case with those in other earlier cases in which states had expressly urged the federal courts to resolve their cases on the merits. Id. For example, in Ohio Bureau of Employment Services, the state did not request Younger abstention in the Supreme Court and the Court considered the issue at the request of an amicus curiae. 431 U.S. at 480. The state had argued Younger abstention to the district court, which had ruled against it, but at the Supreme Court, the state opposed remand based on abstention. Id. The Court noted that where the state opposed abstention[6] and specifically asked for a decision on the merits, the Younger doctrine did not require dismissal. Id. Here, by contrast, the state has requested dismissal based on comity both in this court and the district court.

Similarly, in Brown v. Hotel & Restaurant Employees & Bartenders International Union Local 54, 468 U.S. 491 (1984), although the state had argued for Younger abstention below, it did not press that claim at the Supreme Court but instead expressly submitted to the jurisdiction of the Supreme Court "in order to obtain a more expeditious and final resolution of the merits of the constitutional issue," id. at 500 n.9. And in Sosna v. Iowa, 419

---

[6]    The Court noted that one reason the state might have chosen to forego abstention was to avoid the "prospect of lengthy administrative appeals followed by equally protracted state judicial proceedings." Ohio Bureau of Emp't Servs. v. Hodory, 431 U.S. 471, 480 (1977).

U.S. 393 (1975), both parties addressed the question of Younger abstention, and "urged that [the Court] reach the merits" of the case, id. at 396 n.3.

Here, the Secretary's mere stipulation to a priority decision on summary judgment (and, implicitly, to the retention of federal jurisdiction), does not constitute the "express urg[ing]" necessary for voluntary consent.  While the Secretary did agree to "hold all other proceedings in abeyance" until the district court ruled on the summary judgment motion, he entered into that agreement only after this court specifically rejected his comity argument.  And while it is true that the petition for certiorari had been granted in Levin at the time he entered into the agreement, the case had not yet been decided.[7]

Coors also argues that the Secretary waived any objections to the enforcement of the stipulation agreement by not objecting to the report and recommendation in the proper time frame.  But the Secretary had prevailed on the merits on both issues: the magistrate judge recommended the denial of Coors's motion for summary judgment and the grant of the motion to dismiss.

---

[7]    In addition, the Secretary's decision not to seek certiorari in Coors Brewing Co. did not amount to consent to the exercise of federal jurisdiction and certainly did not amount to consent to forgo the benefit of a later Supreme Court decision expressly abrogating Coors Brewing Co.  The reality is that the public law offices of state attorneys and solicitors general have limited resources and must choose how best to deploy them.

The Secretary wanted an affirmance, so he instead filed a lengthy response to Coors's objections to the report and recommendation.

That the Secretary did not consent to the exercise of jurisdiction was made plain in this response, in which he reiterated that he did not consent to the federal forum and argued that the stipulation agreement should not be construed as such. Indeed, he argued, his compliance with court orders "while forced to litigate against his will in [the federal] forum can hardly be construed as a waiver of [his] prior request for dismissal, or as a voluntary submission to the federal forum." He also argued, once Levin was decided, that the district court was obligated to consider his motion to dismiss on comity grounds before considering the merits of Coors's constitutional claims on summary judgment. We agree.[8]

From the outset of this litigation, the Secretary has claimed the protection of comity. Once the Supreme Court abrogated this court's decision in Coors Brewing Co., he notified the district court within a month and sought immediate dismissal on grounds of comity. In summary, none of his actions in this case

_____

[8] Normally, of course, a court must address jurisdiction before it addresses the merits of plaintiff's claims. See, e.g., Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998). The question here is not one of Article III jurisdiction but whether the federal court was required to refrain from exercising jurisdiction. Here, the Levin decision was an intervening event which should have been given preference and priority. The district court was incorrect, in light of Levin, to address the merits of Coors's claims before dismissing on grounds of comity.

-25-

amounted to voluntary consent, as the Supreme Court has defined that term, and, under the circumstances of the case, he has preserved his comity claim.

B.    Equitable Conduct

Coors argues that even so, the Secretary's conduct as described above, combined with what Coors alleges to be a strategy of "keep away," played by the Commonwealth these last thirty-five years to forestall federal adjudication of the dormant Commerce Clause question, justify setting aside comity in this instance. It is far from clear that Levin permits us to retain jurisdiction over this case on Coors's argument that it would be more equitable to do so given the Commonwealth's conduct. We need not decide this abstract issue, however, because the argument fails on its own terms. We have already addressed and rejected most of the substantive arguments advanced by Coors in support of our retaining jurisdiction. These "equitable conduct" arguments are the same arguments raised under Coors's voluntary consent theory, and merely relabeling the arguments does nothing to advance them. Coors's remaining arguments do not support our retaining jurisdiction even if we had the power to do so.

Coors argues that once the Secretary had "finally agreed[]" to the resolution of the summary judgment motion, and after Coors had "fully performed its obligations under [that] agreement and acted in reliance upon it," the Secretary sought to

renege on the agreement by requesting additional discovery "on immaterial and irrelevant matters" and by reopening the comity question. At this late stage of the litigation, Coors argues that forcing it to file a new suit in the courts of Puerto Rico would "impose an 'unusual hardship'" on it and require "'an unnecessary expenditure of time or energy.'" (quoting Rosewell v. LaSalle Nat'l Bank, 450 U.S. 503, 518 (1981)). Coors notes that it first filed this case in federal district court five years ago and has "expended significant time and costs in" its prosecution. Since comity is an "equitable" doctrine, Fair Assessment in Real Estate Ass'n, 454 U.S. at 116 n.8, Coors argues that the balance of equitable considerations in this case justifies providing it with a federal forum for resolution of its constitutional claims.

Even if the equitable discretion described by Coors existed in these types of cases, this would not be an instance where we would retain jurisdiction. The Secretary's conduct in this case, including as to discovery and the stipulations, was not inequitable and in any event carries little weight when compared to the institutional rationales for comity here. Comity is a doctrine of "equitable restraint," id. at 108 (emphasis added), and operates to "stay [the] hand" of the federal courts when state-law remedies are "plain, adequate, and complete," id. The balance in favor of restraint arises here in the state taxation context: "comity . . . counsel[s] that [federal] courts should adopt a hands-off approach

-27-

with respect to state tax administration."  Nat'l Private Truck Council, Inc. v. Okla. Tax Comm'n, 515 U.S. 582, 586 (1995); see also Fair Assessment in Real Estate Ass'n, 454 U.S. at 108 ("The reason for this guiding principle [of equitable restraint] is of peculiar force in cases where the suit, like the present one, is brought to enjoin the collection of a state tax in courts of a different, though paramount sovereignty." (alteration in original) (quoting Matthews v. Rodgers, 284 U.S. 521, 525 (1932))).  Whether or not inequitable conduct by a party could ever overcome these concerns, the equities in this case weigh more heavily on the side of "aversion to federal interference with state tax administration."  Nat'l Private Truck Council, 515 U.S. at 586.

C.    Whether the Puerto Rico Courts Meet the Adequate State-Court Forum Test

Coors's final argument is that dismissal on comity grounds would be improper because the Puerto Rico court system will not provide "an adequate state-court forum" to hear and decide the merits of the federal constitutional claims.  In Fair Assessment in Real Estate Ass'n, the Court explained that under the doctrine of comity, federal courts must refrain from deciding state tax matters "when remedies at law are plain, adequate, and complete," 454 U.S. at 108, and "where [federal rights] could otherwise be preserved unimpaired," id. at 109 (quoting Boise Artesian Hot & Cold Water Co. v. Boise City, 213 U.S. 276, 282 (1909)) (internal quotation marks omitted).

-28-

Coors argues the Puerto Rico forum is stacked against it: the courts all but certainly will "woodenly" reject its constitutional challenge to the tax. Moreover, in the past, Coors alleges, Puerto Rico's courts have exempted Puerto Rico from the reach of the dormant Commerce Clause entirely and will continue to do so here. Finally, Coors contends that the Puerto Rico courts impermissibly refuse to consider legislative history in determining whether a law has a constitutionally discriminatory purpose and in doing so here, will hinder Coors's ability to present its claims. See, e.g., Family Winemakers of Cal. v. Jenkins, 592 F.3d 1, 13 (1st Cir. 2010) ("[W]hen a state statute is allegedly motivated by an intent to discriminate against interstate commerce," to determine legislative purpose, "we look to 'the statute as a whole,' including statutory text, context, and legislative history, . . . [as well as] whether the statute was 'closely tailored to achieve the legislative purpose' the state asserted" (quoting Alliance of Auto. Mfrs. v. Gwadosky, 430 F.3d 30, 37–38 (1st Cir. 2005))); see also id. at 13 n.15 (describing methodologies employed by other courts of appeal).

As to legislative history,[9] Coors attempts to rely on the case of <u>Chévere</u> v. <u>Levis</u>, 150 P.R. Dec. 525 (2000). The Puerto Rico Supreme Court there, however, expressly reviewed the legislative history of the law in question to determine legislative intent and stated:

> [I]n the process of inquiry into the legislature's intent, it is necessary to examine the legislative history. If the law has a statement of purpose, it generally summarizes the purpose that inspired its creation. In cases in which the law lacks a statement of purpose or, even though it has one, the statement does not contain the legislative intent, it is useful to consult other documents such as the reports from the committees that studied the bill and the debates held when the measure was discussed on the floor of the legislative chamber, as appears in the Record of Proceedings. Likewise, the preliminary drafts and reports surrounding them, which are prepared outside the Legislative Assembly, may be used, when the Assembly had the same before it and substantially adopted the preliminary drafts.

<u>Id.</u> at 540-41 (translation available on Ct. App. Dkt. No. 11-1559).

We reject Coors's contention that the Puerto Rico courts will impermissibly refuse to consider legislative history in

---

[9] The Secretary argues that this is really a dispute about which portions of the legislative history are to be given weight. He cites to <u>F. Vázquez, Inc.</u> v. <u>Sec'y of the Treasury</u>, 103 P.R. Dec. 388, 3 P.R. Offic. Trans. 539 (1975), in which the Puerto Rico Supreme Court stated that, "statements of a lawmaker, on the floor of the legislative body to which he belongs do not represent the collective intent of the body enacting the statute." <u>Id.</u> at 390. The Secretary argues that the Puerto Rico courts do review legislative history and are capable of conducting a comprehensive, "pithy" and "in-depth" review of the applicability of the dormant Commerce Clause. (quoting <u>Coors Brewing Co.</u> v. <u>Mendez-Torres</u>, 787 F. Supp. 2d 149, 197 (D.P.R. 2011)).

-30-

considering Coors's claims.  Nothing in Chévere suggests that the courts, as a rule, will refuse to consider the legislative history in ascertaining the purpose of the excise tax.

Coors also argues that the Puerto Rico courts have refused to hold that the dormant Commerce Clause applies to the Commonwealth, pointing to the concurring opinion of a single justice in a 2007 case.  See Puerto Rican Ass'n of Beer Imps. v. Puerto Rico, 171 P.R. Dec. 140 (2007) (Fuster, J., concurring in the judgment) (stating that the dormant aspect of the Commerce Clause of the U.S. Constitution does not apply to Puerto Rico) (translation available on Ct. App. Dkt. No. 11-1559).  However, in a more recent opinion the Puerto Rico Supreme Court clearly held that the "limitations inherent in the interstate Commerce Clause in its dormant state apply to Puerto Rico ex proprio vigore."  Estado Libre Asociado de P.R. v. Nw. Selecta, Inc., 2012 WL 1109131, 2012 TSPR 56, at *31 (P.R. Mar. 27, 2012).  This opinion also reinforces the rule articulated in Chévere as to when resort to legislative history is appropriate.

Finally, the fact that the Puerto Rico courts ruled against large brewers in earlier cases simply does not meet the test for inadequacy.  This court recently rejected a similar inadequacy challenge brought by cigar manufacturers against a Puerto Rico excise tax which allegedly discriminated against mainland cigar manufacturers.  Pleasures of San Patricio, 596 F.3d

1.  We held that the cigar manufacturers could not demonstrate the inadequacy of the Puerto Rico courts merely by predicting that they would lose their case.  Id. at 9.  We reject Coors's inadequacy argument.

Should Coors receive an unfavorable merits ruling from the Puerto Rico courts, it may seek further review of "[a]ny substantial federal question" in the U.S. Supreme Court.  Levin, 130 S. Ct. at 2334 n.8 (citing McNeese v. Bd. of Educ. for Cmty. Unit Sch. Dist. 187, 373 U.S. 668, 673 (1963)).  In addition, should the Puerto Rico courts, as Coors fears, fail to follow federal constitutional precedent or unconstitutionally constrain their analyses, that, in and of itself, may constitute grounds for a petition for certiorari in the U.S. Supreme Court.[10]

_____

[10]    The Supreme Court has addressed similar challenges under what is known as the "fair support rule."  Where a state court engages in "an obvious subterfuge to evade consideration of a federal issue," Radio Station WOW, Inc. v. Johnson, 326 U.S. 120, 129 (1945), the Supreme Court may look beyond an asserted state law rationale to inquire whether the state court decision rests upon a "fair or substantial basis," Broad River Power Co. v. South Carolina ex rel. Daniel, 281 U.S. 537, 540 (1930); see, e.g., Howlett v. Rose, 496 U.S. 356, 366 (1990); Staub v. City of Baxley, 355 U.S. 313, 318-319 (1958).  The Court has deployed this rule in the context of dormant Commerce Clause challenges to state taxation schemes, see, e.g., Union Pac. R.R. Co. v. Pub. Serv. Comm'n, 248 U.S. 67, 69-70 (1918); Gaar, Scott & Co. v. Shannon, 223 U.S. 468, 470 (1912), and where other state laws have been found to unconstitutionally restrain interstate commerce, see, e.g., Davis v. Wechsler, 263 U.S. 22, 24 (1923); Am. Ry. Express Co. v. Levee, 263 U.S. 19, 21 (1923); Sioux Remedy Co. v. Cope, 235 U.S. 197, 203-04 (1914); Vandalia R.R. Co. v. Indiana ex rel. City of South Bend, 207 U.S. 359, 367 (1907).

IV.

Because <u>Levin</u> applies and requires dismissal of this federal case in favor of resolution of Coors's claims in the courts of Puerto Rico, we affirm the district court's grant of the Secretary's motion to dismiss and vacate the court's denial of Coors's motion for summary judgment.

So ordered.